Susan M. Rotkis, AZ #032866
**CONSUMER ATTORNEYS PLC**
2290 East Speedway Blvd.
Tucson, AZ 85719
Tel: (602) 807-1504
Fax: (718) 715-1750
E-mail: srotkis@consumerattorneys.com

*Attorneys for Plaintiff,*
*JJ Bazzi*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

JJ Bazzi,
on behalf of himself and
all others similarly situated.

       Plaintiff,

v.

JP Morgan Chase Bank, N.A.,

       Defendant.

**Case No.:**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JJ Bazzi ("Mr. Bazzi" or "Plaintiff"), on behalf of himself and others similarly situated, alleges violations of the Equal Credit Opportunity Act based upon the following facts in support of this Class Action Complaint against JPMorgan Chase Bank, N.A. ("Chase" or "Defendant").

### PRELIMINARY STATEMENT

1. This is a class action complaint prosecuted for the Defendant's violation of the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 *et seq.*

2. Chase regularly accepts and processes consumer credit applications, extends credit, services existing credit accounts, participates in credit decisions and takes adverse actions against consumers.

3. Despite this role, Chase did not provide Mr. Bazzi with an ECOA-compliant adverse action notice when it unilaterally terminated his Chase credit accounts.

4. Upon information and belief, Chase purposely avoids providing consumers

1

with notices of adverse actions that provide the principal or true reason for terminating an account.

5.    Failure to provide the principal and truthful reason for terminating an account violates the ECOA.

6.    Specifically, and by example only, when Chase unilaterally changes the terms of credit granted to an applicant by canceling the account, which is an adverse action against an applicant, and supplies the reason, "because of unexpected activity on these or another Chase account," it does not supply the actual ECOA-compliant reason for the cancelation in or change in terms of credit.

7.    Therefore, Chase's adverse action notice does not disclose the principal, accurate or specific reasons for taking adverse actions as required under the ECOA.

8.    In addition to supplying a pretextual, false, inadequate, or secondary reason instead of the true or principal reason for taking adverse action, the Defendant's adverse action notices fail to supply other mandatory disclosures required by the ECOA.

9.    Mr. Bazzi is an applicant, as defined by the ECOA, and consumer with excellent credit, who was compliant with the terms of his Chase accounts, has had a long and positive credit history with Chase, and had a low credit utilization rate.

10.    This action is brought for equitable and declaratory relief together with costs and attorneys' fees pursuant to the Equal Credit Opportunity Act (ECOA) 15 U.S.C. §1691 et. seq., and in particular § 1691(d) and its implementing regulations 12 C.F.R. 1002.9 (Regulation B) and § 1691(a)(1).

## JURISDICTION

11.    The Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1691e.

12.    The Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

13.    Venue is proper because Defendant has physical presence in the District and regularly does business in Arizona, including with Plaintiff, who resides in Arizona.

28 U.S.C. § 1391(b)(1).

### **PARTIES**

14.    Mr. Bazzi is a natural person who was an "applicant," "consumer," and "person" protected by the Equal Credit Opportunity Act.

15.    Mr. Bazzi lives in the city of Gilbert, Maricopa County, Arizona.

16.    Chase is a foreign corporation engaged in the business of issuing credit cards, with a principal place of business located at 1111 Polaris Parkway, Columbus, OH 43240.

17.    Chase can be served through its registered agent, CT Corporation System, located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

18.    Chase is a "creditor" as defined by the ECOA.

19.    Mr. Bazzi and each putative class member are "applicants" under the ECOA as defined by the implementing Regulation B, which defines an applicant as "any person who requests or who has received an extension of credit from a creditor and includes any person who is or may become contractually liable regarding an extension of credit. The term 'applicant' also includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R 1002.2(e).

### **FACTS**

20.    Mr. Bazzi has been banking with Defendant Chase for over 20 years.

21.    Mr. Bazzi had multiple Chase credit card accounts, that were all in good standing, up to date, paid on time, and active in March of 2023.

22.    In or around the end of February of 2023, Chase sent Mr. Bazzi a notice dated February 26, 2023 (the "February Notice"), stating that it was closing three of his Chase credit card accounts ending in 4563, 7189, and 9461 (the "Accounts") "because of unexpected activity on these or another Chase account."

23.    The Notice indicated that Chase would close Mr. Bazzi's Accounts on March 26, 2023.

24.     On or about March 10, 2023, Mr. Bazzi opened the Notice from Chase and learned about the forthcoming closures regarding his Chase credit card accounts.

25.     Mr. Bazzi contacted the number on the notice (877-225-0851) and spoke to a representative of Chase.

26.     Mr. Bazzi inquired as to the reason Chase was closing his accounts and explained that he has always been a good customer, that he has never been late on any of his payments, he's never had any issues with Chase and he always pays off his balances.

27.     The Chase representative informed Mr. Bazzi that there was not any information that could be provided to him, and they could only tell him what the notice states – which is that "after careful consideration" Chase decided to close his Accounts due to "unexpected activity."

28.     Mr. Bazzi was confused, and emotionally distraught because he had no idea why Chase was closing all his credit card accounts.

29.     Moreover, in the months leading up to the Notice regarding his credit accounts, Mr. Bazzi received another notice in or around December 2022 from Chase informing him his checking and savings accounts were being closed due to "unexpected activity on this or another Chase account."

30.     Mr. Bazzi had never been late on any of his payments on any of his Chase credit card accounts.

31.     Mr. Bazzi had never had any "unexpected activity," fraudulent activity or any other type issues with his credit card accounts or checking and savings accounts since they were opened with Defendant.

32.     Mr. Bazzi had never had any issues with Chase and was an exceptional customer.

33.     Further, the closure of the credit accounts would significantly impact Mr. Bazzi's credit score and/or credit worthiness because it would cause a huge reduction in his available credit.

4

34.    Again, on or about March 13, 2023, Mr. Bazzi called Chase.

35.    Mr. Bazzi once again inquired as to the reasons for the Account closures.

36.    The representative for Chase indicated that the Accounts were being closed and it was a final decision.

37.    The representative also indicated that she did not have information about the closure and that there was no description of the reasoning for the closure that she could share.

38.    The representative indicated that a notice was sent out with more information, however, Mr. Bazzi informed the representative that the notice only stated that it was due to "unexpected activity."

39.    The representative indicated that she had no other reasons to provide him other than what was in the letter.

40.    During the call, Mr. Bazzi expressly requested that Chase reconsider extending him credit.

41.    The representative indicated that Chase would not reconsider him because a final decision was made.

42.    As a result, Mr. Bazzi's reconsideration for extension of credit with Defendant was denied.

43.    Mr. Bazzi further requested that he be transferred to someone who could tell him the reason his credit card accounts were closed.

44.    The representative indicated that Mr. Bazzi had reached the "highest level of authority" he could talk to.

45.    Despite the February Notice indicating Mr. Bazzi's Accounts would be closed on March 26, 2023, Chase did not close the accounts on that day.

46.    Mr. Bazzi was left confused and surprised at Chase's actions.

47.    On or about March 29, 2023, Mr. Bazzi called Chase to inquiry about the status of his credit accounts.

48. Mr. Bazzi spent a significant amount of time on the phone with Chase and was transferred to numerous representatives during the call.

49. Mr. Bazzi was told that his credit accounts would still be closed but Chase could not tell him when the accounts would be closed, despite the February Notice providing a March 26, 2023 date.

50. Mr. Bazzi was left further confused and emotionally distraught at Chase's actions because he was unaware of the reasons his Accounts were being closed and was unaware of when his Accounts would actually be closed.

51. Mr. Bazzi has always paid his bills on time and has never had any issues with Chase in the past and was surprised that Chase was treating him in such a way.

52. Chase did not close Mr. Bazzi's credit accounts in or around April 2023, despite the February Notice clearly stating the credit accounts would be closed on March 26, 2023.

53. Furthermore, when Mr. Bazzi contacted Chase after March 26, 2023, Chase would still not provide the reason for the closure of the credit accounts.

54. In or around the beginning of May 2023, Mr. Bazzi's credit accounts were still open.

55. Mr. Bazzi proceeded to make purchases using the credit accounts believing that Chase was no longer closing the accounts.

56. Mr. Bazzi was able to make purchases using the Accounts and was able to pay off the balances owed.

57. Thereafter, on or about May 10, 2023, Chase finally closed the Accounts it indicated it was going to close in the February Notice.

58. On or about May 10, 2023, Mr. Bazzi contacted Chase to determine the status of his remaining credit card account ending in 7574.

59. Chase informed Mr. Bazzi that the 7574 account would be closed but did not know when.

60. Mr. Bazzi was left further confused and emotionally distraught.

61. Mr. Bazzi felt as though Chase was intentionally tricking him and/or making false representations to him in an effort to cause him to suffer from emotional distress and mental pain and anguish.

62. The actions by Chase were especially harmful to Mr. Bazzi because he did not know the reasons why Chase was closing his accounts.

63. After the May 10, 2023 call, Plaintiff received another notice from Chase in the mail (the "May Notice").

64. The notice indicated that Chase was closing Plaintiff's credit account ending in 7574.

65. The notice indicated that Chase was closing the account "because of your association with a Chase credit card, deposit or investment account that was previously closed."

66. Plaintiff was confused as to the actual reason(s) Chase was closing the 7574-account identified in the May Notice because he was never told the reasons for the closure of his other Accounts. Although the Card Agreement may have provided Chase the right to terminate the card agreements, Chase was still required by the ECOA to provide Mr. Bazzi with a specific reason(s) for the termination in writing.

67. Upon information and belief, based on the reason provided of "unexpected activity" and the fact Mr. Bazzi was compliant with the terms of his credit card accounts, had excellent credit, and low credit utilization rate overall, Chase's reasons were not only untruthful, but its actions would lead a reasonable consumer to conclude he Chase's conduct was unlawful credit discrimination under the ECOA.

68. When Mr. Bazzi called Chase to request reinstatement of his terminated accounts, Chase refused to reconsider the adverse action or explain the "unexpected activity" that Mr. Bazzi allegedly had engaged in.

69. A creditor may elect to provide a consumer with a statement of reasons in

the adverse action notice itself, or it may provide the consumer with a disclosure both of his right to receive a written statement of reasons and the identity of the person from whom the written statement of reasons may be obtained. Chase's adverse action notice did not provide either method of communicating the statement of reasons for taking adverse action against the Plaintiffs.

70.     Chase knew or should have known the adverse action notice it sent to Mr. Bazzi was not only non-compliant with the ECOA, but that it was false.

71.     Upon information and belief, Chase knew that Mr. Bazzi was entitled to adverse action notices because, although illegal due to its pretext for termination, Chase did provide Mr. Bazzi with an ECOA notice, complete with ECOA warnings. Once Chase sent an ECOA notice to Mr. Bazzi, it was obligated to send a notice that was compliant with the ECOA.

72.     Chase is a large credit granting agency that extends credit to thousands of consumers each year, and knew or should have known about the requirements of Regulation B. Therefore, there is no justifiable reason or good faith basis for its failure to comply with the minimum adverse action requirements of Regulation B.

73.     Chase's conduct in sending the adverse action notice to Plaintiff and the class and closing their accounts was not a mistake. Rather, it was exactly as Chase intended.

74.     The ECOA adverse action notice requirement was enacted as "a strong and necessary adjunct to the anti-discrimination purpose" of the statute and to "fulfill[] a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit." S. REP. No. 94-589, at 406, 408, 1976 WL 13838, at *4, *7 (Jan. 21, 1976).

75.     Upon signing of the amendment expanding the ECOA into law, President Gerald Ford issued a statement on March 23, 1976, in which he confirmed that in

addition to its anti-discrimination purpose, the law "permits the Attorney General, as well as private citizens, to initiate suits where discrimination in credit transactions has occurred. It also provides that a person to whom credit is denied is entitled to know of the reasons for the denial." Presidential Statement on Signing the Equal Credit Opportunity Act        Amendments        of        1976,        available        at https://www.presidency.ucsb.edu/documents/statement-signing-the-equal-credit-opportunity-act-amendments-1976 (last visited June 26, 2023). These "twin goals" of the 1976 amendment to the Act have been repeatedly recognized by the courts as the basis for the statutory requirement.

76.     Chase's failure to provide an ECOA-compliant adverse action notice, which contains the principal reason for denial of credit, deprived Mr. Bazzi of the right to information mandated by Congress to further the anti-discrimination and educational purposes of the statute.

77.     Chase's conduct against Mr. Bazzi is the very type of conduct that caused the ECOA to be enacted by Congress in order to protect consumers.

78.     The injuries that Mr. Bazzi and the class suffered as a result of Chase's violations are the very types of injuries that the ECOA was enacted to address.

79.     Because the Accounts were closed when there were balances and activity, the closure by a credit grantor is a negative credit reporting event because it has a negative effect on credit utilization ratio and credit mix.

80.     These negative events lowered Mr. Bazzi's credit score. https://www.equifax.com/personal/education/credit/report/inactive-credit-card-account-closed/

81.     Chase's malfeasance caused a cognizable informational injury to Mr. Bazzi who is left baffled by the decision to close some of his credit card Accounts despite the fact that he has well-established accounts all in good standing.

82.     Mr. Bazzi was injured because he was deprived of the information he was

entitled to under the ECOA, which would provide him knowledge of conduct within his control that caused Chase's decision to close the Accounts.

83.    Mr. Bazzi was injured because he was deprived of information that would have informed him whether he is the victim of credit discrimination and, based on the reason provided and his credit information, he was a victim of credit discrimination.

84.    Mr. Bazzi was injured because he did not receive the benefit of the favorable credit terms of the Accounts, which Plaintiff used to his financial benefit.

85.    Mr. Bazzi was injured because he suffered damage to his credit standing when Chase closed the Accounts.

86.    Mr. Bazzi was injured because he suffered physical injury as a result of emotional distress, intense anxiety, stress, sleep deprivation, embarrassment, lost time, strain on his relationships, and inconvenience.

87.    Mr. Bazzi was injured because he suffered economic injuries resulting from the closures.

88.    The putative class members suffered the same or similar informational, financial, and emotional injuries that Mr. Bazzi suffered, which injuries the ECOA was designed to protect against.

89.    Chase failed to provide an adequate statement of reasons for its adverse action to the class members as required under the ECOA.

90.    Upon information and belief, Chase unlawfully discriminated against Plaintiff and the putative class based on their race, religion, and/or national origin.

91.    This action is alleged as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and 15 U.S.C. § 1691e (a) on behalf of the following class of Arizonans ("ECOA Adverse Action Class") who suffered violations of 15 U.S.C. § 1691(d) initially defined as:

(a.)    All natural persons, (b.) residing in the geographic boundaries of Arizona; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar

10

to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

And a class of Arizonans ("ECOA Discrimination Class") who suffered violations of 15 U.S.C. § 1691(a)(1) initially defined as:

(b.)    All natural persons, (b.) who are members of a protected class; (c.) residing in the geographic boundaries of Arizona; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

92.    **Numerosity:** Upon information and belief, Plaintiff alleges the class of persons to be represented is so numerous that joinder of all members is impractical. Defendant's website states:

> JPMorgan Chase & Co. (NYSE: JPM), a financial holding company incorporated under Delaware law in 1968, is a leading financial services firm based in the United States of America ("U.S."), with operations worldwide. JPMorgan Chase had $3.7 trillion in assets and $286.4 billion in stockholders' equity as of June 30, 2021. The Firm is a leader in investment banking, financial services for consumers and small businesses, commercial banking, financial transaction processing and asset management. Under the J.P. Morgan and Chase brands, the Firm serves millions of customers in the U.S., and many of the world's most prominent corporate, institutional and government clients globally. JPMorgan Chase's principal bank subsidiary is JPMorgan Chase Bank, National Association ("JPMorgan Chase Bank, N.A."), a national banking association with U.S. branches in 43 states and Washington, D.C. as of June 30, 2021. Found at CORP Q2 2021 (jpmorganchase.com) last visited October 6, 2021. According to Chase's website, it serves "nearly half of America's households with a broad range of financial services, including personal banking, credit cards, mortgages, auto financing, investment advice, small business loans and payment processing" and has more than 4,700 branches. Found at About Chase Bank last visited October 6, 2021.

93.    **Typicality:** The letter mailed to Mr. Bazzi is an obvious form letter. Mr. Bazzi and each member of the class are entitled to information about the principal reason that an adverse credit decision was made by Chase. Mr. Bazzi's claim is not only typical of the class, but it is likely identical to the claims of each class member for the Chase's failure to comply with the ECOA because it likely sent identical adverse action letters,

none of which stated the specific or truthful reasons for taking adverse action required by the ECOA and/or Regulation B.

94. **Commonality:** There are questions of law and fact common to the class, and Plaintiff's claim are typical of the claims of all the potential class members. All are based on the same legal and remedial theories and the same reason stated in the denial letters. All are based on the simple class questions of whether or not Chase failed to provide a specific and truthful statement of reasons for taking adverse action on loan applications in its adverse action notices and whether such failure violated the ECOA.

95. **Adequacy:** Plaintiff will fairly and adequately protect the interest of the class. Plaintiff has retained counsel who is experienced in handling class actions and litigation under the Federal Consumer Credit Protection Act, including the Equal Credit Opportunity Act. He is committed to the class and has no conflict with it.

96. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy as to the ECOA class. There are no individual issues that would burden or impede litigation in the aggregate. Class resolution will provide a uniform decision on the legality of Chase's standard process. Further, absent class representation, it is certain that most class members will be unaware of their rights or be able to obtain adequate legal representation to prosecute those rights.

97. **Predominance:** Chase has acted or refused to act on grounds that apply generally to the ECOA class such that uniform relief is appropriate. The class claim and the relief sought in this class action predominate over any potentially individual claim a class member may have.

98. Chase has made a conscious or reckless decision to disregard the ECOA's requirement to provide a specific statement of reasons for taking adverse action on consumer credit applications despite the plain language of the statute and the regulations promulgated by the Consumer Financial Protection Bureau. It has acted on grounds that apply to the class, so that final injunctive relief and declaratory relief will benefit the

entire class.

99.    Chase has more than adequate resources to comply with the ECOA's adverse action requirements. It has violated the ECOA in a uniform way affecting potentially thousands of consumers despite its knowledge of the adverse action notice requirements.

100.    Despite the clear instructions set forth in the ECOA and Regulation B, Defendant has refused to and failed to comply with the adverse action notice requirements persistently for the entire period of five years preceding the filing of this complaint.

### COUNT I – Equal Credit Opportunity Act
### 15 U.S.C. §1691(d)
### Class Claim

101.    Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that failed to provide an adequate, truthful, primary, or specific statement of reasons for taking adverse action, which violated the ECOA, 15 U.S.C. §1691(d). Defendant's conduct is uniform as to the putative ECOA class.

102.    Plaintiff and the putative ECOA class are entitled to a declaration that Defendant's adverse action notices violate the ECOA.

103.    Plaintiff and the putative class suffered concrete informational injuries which the ECOA was designed to address, caused by Defendant's conduct in purposely supplying a false reason and refusing to disclose the principal reason for the cancelation of credit.

104.    Plaintiff and the putative ECOA class are entitled to equitable relief in the form of an injunction requiring Defendant to send ECOA-compliant notices to all members of the putative class, together with the other mandatory disclosures required by the ECOA.

105.    Under the ECOA, Plaintiff and the class are entitled to equitable and

declaratory relief necessary to enforce the purpose of the statute, attorneys' fees, and costs to be determined by the Court. 15 U.S.C. § 1691e.

106.     Under the ECOA, Plaintiff and the class are entitled to statutory punitive damages up to $10,000 for each violation.

### COUNT II – Equal Credit Opportunity Act
### 15 U.S.C. §1691(a)(1)
### Class Claim

107.     Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that unlawfully discriminated against Plaintiff on the basis of race, religion, and/or national origin, which violated the ECOA, 15 U.S.C. §1691(a)(1). Defendant's conduct is uniform as to the putative ECOA class.

108.     Defendant knew Plaintiff was a member of a protected class.

109.     Upon information and belief, based on the reason provided of "unexpected activity on these or another Chase account" and the fact Plaintiff was compliant with the terms of his credit card accounts, had excellent credit, and low credit utilization rate overall, Chase closed Plaintiff's accounts because of his race, religion, and/or national origin, which is unlawful credit discrimination under the ECOA, 15 U.S.C. §1691(a)(1).

110.     Upon information and belief, the putative ECOA class have suffered similar discrimination to Plaintiff.

111.     Upon information and belief, the putative ECOA class are entitled to a declaration that Defendant's mass account closures violate the ECOA.

112.     Plaintiff and the putative class suffered concrete injuries which the ECOA was designed to address, caused by Defendant's conduct in discriminating against them by closing their credit accounts, an adverse action, solely based on race, religion, and/or national origin.

113.     Defendant's conduct entitles Plaintiff and other similarly situated members of the ECOA class to actual statutory punitive damages of up to $10,000 per violation, plus attorneys' fees and costs pursuant to 15 U.S.C §1691e(d).

1

**PRAYER FOR RELIEF**

2      **WHEREFORE,** Plaintiff JJ Bazzi respectfully requests judgment be entered

3 against Defendant for the following:

4      A.    Equitable and declaratory relief against Defendant pursuant to the

5            ECOA, including issuance of ECOA compliant notices to every class

6            member;

7      B.    Actual damages pursuant to ECOA, 15 U.S.C §1691e(a);

8      C.    Statutory punitive damages of up to $10,000 per violation pursuant to

9            ECOA, 15 U.S.C §1691e(b);

10     D.    Attorneys' fees and costs pursuant to ECOA, 15 U.S.C §1691e(d);

11     E.    Any pre-judgment and post-judgment interest at the legal rate, and

12     F.    Any such other relief the Court deems just, equitable and proper.

13
**TRIAL BY JURY IS DEMANDED**.
14
Dated: August 3, 2023
15
                         **JJ Bazzi, on behalf of himself and all similarly**
16                       **situated individuals,**

17                       */s/ Susan M. Rotkis*
                         Susan M. Rotkis, AZ #032866
18                       **CONSUMER ATTORNEYS PLC**
                         2290 East Speedway Blvd.
19                       Tucson, AZ 85719
                         Tel: (602) 807-1504
20                       Fax: (718) 715-1750
                         E-mail: srotkis@consumerattorneys.com
21
22                       *Attorneys for Plaintiff,*
                         *JJ Bazzi*
23
24
25
26
27
28

15