**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JJ Bazzi,<br><br>            Plaintiff,<br><br>vs.<br><br>JP Morgan Chase Bank NA,<br><br>            Defendant. | No. CV-23-01570-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion to Compel Arbitration and stay this action pending arbitration. (Doc. 9). This Motion is fully briefed. (Docs. 9, 11, 12).[1] Also, before the Court is Plaintiff's Motion to Exclude the Declarations of Benjamin Ip and Eric Bass which Defendant used to support its motion. (Doc. 15). Plaintiff's motion is also fully briefed. (Docs. 15, 17, 18). For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted in part and denied in part.

**I.  BACKGROUND**

Between 2011 and 2016 Plaintiff JJ Bazzi entered into three separate agreements with Chase Bank USA, N.A. ("Chase Bank") in connection with opening three different credit card accounts ("Account 9461," "Account 4563," and "Account 7189"). (Doc. 9 at 2). The three agreements (collectively, "Cardmember Agreements") contain identical provisions stating that their terms may be changed at any time including by "add[ing] new

---

[1] Pursuant to the Court's Order to Clarify (Doc. 13), the parties also filed joint supplemental briefing (Doc. 14).

terms or delet[ing] terms." (Doc. 9 at 2; Doc. 11 at 3).

On May 18, 2019, Defendant JP Morgan Chase Bank NA ("JPMC") merged Chase Bank with and into JPMC, with JPMC being the surviving bank. As a result of the merger, Chase Bank assigned all of its rights regarding credit card agreements, including Plaintiff's Cardmember Agreements, to JPMC. (Doc. 9 at 3). On May 21, 2019, JPMC sent Plaintiff three separate—but nearly identical—notices via electronic mail entitled "Important Changes to Your Account Terms" regarding Plaintiff's Cardmember Agreements (the "Changes in Terms Documents"). (*Id.*). The Changes in Terms Documents provided information about the merger and explained that the original Cardmember Agreements were modified to include Arbitration Agreements. (Doc. 9-5 at 1; Doc. 9-6 at 1; Doc. 9-7 at 1). The notices provided detailed information about the Arbitration Agreements:

> **8. ARBITRATION AGREEMENT**
>
> A new section titled Arbitration Agreement is hereby added to the end of the agreement as follows:
>
> **ARBITRATION AGREEMENT PLEASE REVIEW— IMPORTANT—AFFECTS YOUR LEGAL RIGHTS**
>
> This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.
>
> YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATION, BUT IF YOU WISH TO REJECT IT, YOU MUST DO SO PROMPTLY. If you do not reject this agreement to arbitration by [08/07/2019 for Account 9461 and 08/09/2019 for Accounts 4563 and 7189] in the manner set forth below . . . .

(Doc. 9-5 at 5; Doc. 9-6 at 5; Doc. 9-7 at 5). The parties agree that the terms in the original Cardmember Agreements permitted JPMC to make this modification. (Doc. 9 at 2; Doc. 11 at 4). Plaintiff never rejected any of the terms in the Arbitration Agreements. (Doc. 9 at 6). Though, Plaintiff "disputes that there is a valid and enforceable arbitration agreement

2

between himself and Defendant because Plaintiff never received the alleged email and never saw the changes in terms." (Doc. 11 at 3). JPMC, however, claims that it "sent the Changes in Terms Documents to the email addresses provided by Plaintiff and JPMC has no record suggesting the electronic mail correspondence was undeliverable." (Doc. 9 at 3).

On August 3, 2023, Plaintiff filed this action against JPMC alleging class claims under the Equal Credit Opportunity Act (15 U.S.C. §§ 1691(a)(1) and 1691(d)). (Doc. 1). On September 21, 2023, JPMC moved to compel Plaintiff's claims to arbitration on a non-class basis and to stay this action pending arbitration. (Doc. 9).

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (alterations in original). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4) (other citations omitted). "The standard the court applies in making the arbitrability determination is similar to the summary judgment standard, and the court should review the record to determine if the party opposing arbitration has raised any triable issue of fact." *The O.N. Equity Sales Co. v. Thiers*, 590 F. Supp. 2d 1208, 1211 (D. Ariz. 2008).

"Arbitration agreements are presumptively enforceable under the FAA 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006) (quoting 9 U.S.C. § 2). The FAA's saving clause, however, "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that

govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the parties agree that Delaware contract laws apply. (Doc. 9 at 8; Doc. 11 at 4).

**III.   DISCUSSION**

      a.   Plaintiff's Motion to Exclude Declarations

First, the Court addresses Plaintiff's motion to exclude the declarations of Defendant's employees, Benjamin Ip and Eric Bass. (Doc. 15). Defendant submitted these declarations in support of its Motion to Compel Arbitration. (Doc. 12). Mr. Ip is Vice President, Product Manager at JPMC. (Doc. 12-1). Mr. Ip declared under penalty of perjury that Plaintiff agreed to receive electronic notifications when he accepted Defendant's Online Service E-Sign Disclosure and Consent agreement (the "E-Sign Agreement") and the Online Service Agreement. (*Id.*). Mr. Ip attached the metadata reflecting this information to his declaration. (Doc. 12-4). Mr. Bass is Executive Director, Operations Director at JPMC. (Doc. 12-5). Mr. Bass declared under penalty of perjury that Defendant sent Plaintiff the Changes in Terms Documents via electronic mail using the electronic mailing address that Plaintiff provided. (*Id.*). Mr. Bass also attached the metadata showing that this information was sent to Plaintiff. (Doc. 12-6). Plaintiff does not deny that the information from the metadata attachments is associated with him. (Doc. 14). In his motion, however, Plaintiff argues that Mr. Ip's and Mr. Bass's declarations should be excluded or stricken because they are not based on personal knowledge and are inadmissible hearsay under Fed. R. Evid. 401. (Doc. 15 at 4–5).

A declaration used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Here, Mr. Ip's and Mr. Bass's declarations state that they have knowledge of the facts set forth in their statements and that they could competently testify to the facts if needed. (Doc. 12-1; Doc. 12-5). Mr. Ip and Mr. Bass also state that they personally reviewed JPMC's records reflecting the information provided in their declarations. (*Id.*). Thus, Mr. Ip and Mr. Bass have satisfied

the low threshold of establishing personal knowledge. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) ("the requirement of personal knowledge imposes only a 'minimal' burden on a witness; if 'reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible.'") (citation omitted).

Plaintiff contends that the declarations are inadmissible hearsay because Mr. Ip and Mr. Bass state that they were "informed" of the information. (Doc. 15 at 4). However, as previously mentioned, Mr. Ip's and Mr. Bass's declarations are based on their personal review of JPMC's records. (Doc. 12-1; Doc. 12-5). Therefore, it does not matter if they were also informed of this information. *See id.* at 1045 ("While some of what [Mr. Ip and Mr. Bass] say may be hearsay, much purports to reflect [their] own observations."). Moreover, Defendant submitted Mr. Ip's and Mr. Bass's declarations to show that it notified Plaintiff about the Changes in Terms Documents. *See also Johnson v. Peralta Cmty. Coll. Dist.*, No. C-94-4255 MMC (PJH), 1997 WL 227903, at *6 (N.D. Cal. Apr. 28, 1997), *aff'd*, 142 F.3d 443 (9th Cir. 1998) (excluding the declaration for the truth of the matter asserted but allowing it into evidence to show that the party received notice). Accordingly, Plaintiff's motion to exclude this evidence is denied.

b. Defendant's Motion to Compel Arbitration

There is no dispute that the Arbitration Agreements cover all of Plaintiff's claims and require Plaintiff to proceed arbitration on an individual basis only.[2] Plaintiff advances only two arguments to challenge the validity of the Arbitration Agreements: (1) JPMC failed to comply with electronic disclosure requirements and (2) Plaintiff never assented to the Arbitration Agreements.

---

[2] Plaintiff stated in his response that "it is unnecessary to address Defendant's arguments related to the scope of the alleged arbitration agreements and whether Plaintiff's claims must be arbitrated on an individual basis." (Doc. 11 at 12). Thus, Plaintiff waives any arguments against these issues. *See Myers v. United States*, 673 F. App'x 749, 752 (9th Cir. 2016) ("indeed, failure to address an issue in an answering brief may waive any argument on the issue.").

Under Delaware law, a bank may at any time amend agreements governing revolving credit plans so long as it follows federal notice requirements. *See* Del. Code Ann. tit. 5, § 952(a) (West). Plaintiff argues that the Arbitration Agreements are invalid because JPMC failed to follow the notice requirements under the Electronic Signatures in Global and National Commerce Act ("E-SIGN Act"), 15 U.S.C. §§ 7001-7006. (Doc. 9 at 4–5). However, the record shows that this is not true. On July 29, 2008, Plaintiff accepted the E-Sign Agreement and the Online Service Agreement. (Doc. 12-2; Doc. 12-3; Doc. 12-4; Doc. 14). The terms in these documents satisfy the requirements under the E-SIGN Act.

The only remaining argument Plaintiff has against enforcing the Arbitration Agreements is that he never intended to be bound to arbitration. More specifically, Plaintiff argues that "he never even received the purported email from Defendant, he never saw the email and Defendant has not provided any proof that the email was even sent." (Doc. 11 at 10). However, Defendant has provided a screenshot of JPMC's internal metadata to show that the Changes in Terms Documents were emailed to Plaintiff. (Doc. 12-6; Doc. 14). The Changes in Terms Documents were sent to Plaintiff "pursuant to [JPMC's] ordinary business practices," and Plaintiff "continued making payments across his accounts after JPMC amended the Cardmember Agreements." (Doc. 12 at 7–8). This evidence is sufficient to show that Defendant provided proper notice and Plaintiff intended to be bound by the amended agreement. *See Pick v. Discover Fin. Servs., Inc.*, No. CIV. A. 00-935-SLR, 2001 WL 1180278, at *4 (D. Del. Sept. 28, 2001) ("Although plaintiff claims that he never received the Notice of Amendment, defendant's mailing procedures and plaintiff's payment of his [] bill are sufficient evidence to satisfy defendant's burden of demonstrating adequate notice to plaintiff."). Plaintiff raises no other issues with the Arbitration Agreements. Accordingly, the Arbitration Agreements are enforceable, and pursuant to the Agreement, Plaintiff must arbitrate his claims on an individual, non-class basis.

Upon finding that an arbitration agreement is valid and enforceable, the district court "should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole."

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006). However, in cases where only a motion to stay is sought, the court may "dismiss [the case] outright" if "the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (citation omitted); *see also Sparling v. Hoffman Const. Co.*, 864 F.2d 635 (9th Cir. 1988) (holding that the district court acted within its discretion when it dismissed the claims since all of the claims were subject to arbitration). Since all of Plaintiff's claims must be submitted to arbitration on an individual basis, the Court concludes that this action should be dismissed.

### IV.   CONCLUSION

For the reasons stated, Plaintiff's motion to exclude Mr. Ip's and Mr. Bass's declarations is denied and Defendant's motion to compel arbitration on an individual basis is granted. However, Defendant's motion to stay proceedings pending completion of arbitration is denied, in the Court's discretion, this case is dismissed.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Exclude the Declarations of Benjamin Ip and Eric Bass (Doc. 15) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 9) is **granted** to the extent it seeks to compel Plaintiff to arbitrate on an individual basis.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 9) is **denied** to the extent it seeks a stay, and in the Court's discretion, this case is **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action accordingly.

Dated this 22nd day of November, 2023.

Honorable Steven P. Logan
United States District Judge